UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| SANDRA LYNN DIXON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7: 15-011-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Sandra Lynn Dixon ("Dixon" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 12, 13] Dixon argues that the Administrative Law Judge ("ALJ") erred in concluding that she is not entitled to a period of disability, disability insurance benefits, and supplemental security income. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Dixon.

**I.**

On December 2, 2011, Dixon filed a Title II application for a period of disability and disability insurance benefits. [Administrative Transcript, "Tr.," p. 233] She alleged a

disability beginning April 3, 2008.[1] [*Id.*, p. 231] Dixon, along with attorney David Hicks and vocational expert ("VE") Stephanie Barnes, appeared before ALJ Don C. Paris on August 13, 2013, for an administrative hearing. [*Id.*, pp. 13–40] On August 29, 2011, ALJ Paris found that Dixon was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). [*Id.*, p. 55] Dixon appealed the ALJ's determination to the Social Security Administration's ("SSA") Appeals Council. However, the SSA Appeals Council declined the Claimant's request for review. [*Id.*, p. 1]

Dixon was 35 years-old when her alleged disability began, and 41 years-old at the time of the ALJ's decision. [Tr., pp. 55, 143] She has completed high school and two years of college. Dixon previously worked as a licensed practical nurse. [*Id.*, pp. 244–45] After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Dixon suffers from the following severe impairments: (i) cardiac dysrhythmias; (ii) degenerative disc disease of the lumbar spine; (iii) affective disorder; and (iv) anxiety disorder. [*Id.*, p. 46] Notwithstanding these impairments, the ALJ determined that the Claimant maintained the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> standing or walking six hours in an eight-hour day, except with never climbing ladders or scaffolds; only occasionally climbing ramps or stairs; and frequently balancing, stooping, kneeling, crouching, or crawling. The claimant should avoid exposure to extreme cold, vibration, and all hazards such as unprotected heights and dangerous machinery. She has the ability to understand and remember simple and detailed instructions with good understanding and persistence within given physical limitations, sustain attention and

---

1  Dixon filed a prior claim for disability benefits on July 31, 2009. [Tr., p. 63] On November 10, 2011, ALJ Andrew J. Chwalibog found that she was not disabled under sections 216(i) and 223(d) of the Social Security Act. [*Id.*, p. 77]

concentration for at least two hours at a time and not be distracted by others. The claimant is able to perform activities within a schedule and maintain regular attendance within customary tolerances. The claimant may have mild difficulties interacting with the public, asking questions, and accepting instruction and criticisms from supervisors. The claimant would be able to interact appropriately with coworkers, maintain socially appropriate behavior and adhere to basic standards of neatness. The claimant maintains the ability to respond appropriately and adapt to simple changes in the environment, be aware of hazards, travel, use public transportation, and set realistic goals and plans independently.[2]

[Tr., p. 48]

After considering Dixon's age, education, work experience, and RFC, ALJ Paris concluded that the Claimant could perform a significant number of jobs in the national economy, including: office helper, mail sorter, produce sorter, and phlebotomist. [*Id.*, p. 55] As a result, the ALJ determined that Dixon was not disabled from April 3, 2008, through the date of the administrative hearing. [*Id.*]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mentalimpairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's SocialSecurity disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four

---

2   The ALJ largely adopted the constraints in the previous ALJ's decision. [*Compare* Tr., p. 48 *with* p. 67] However, the ALJ in this case added a few mental constraints and altered the constraint on crawling from "occasionally" to "frequently." [*Id.*]

steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b).Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Dixon claims that the ALJ erred in concluding that she has an RFC of light work, with certain constraints. [Record No. 12] Residual functional capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 416.946(c).

In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. S.S.R. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). A job in this category usually involves either a "good deal of walking or standing," or sitting while pushing and pulling arm-hand or leg-foot controls. *Id.*

Dixon argues that the ALJ erred in determining that she has an RFC of light work with several identified restrictions. First, she asserts that the ALJ improperly discounted the opinion of her "treating physician." [Record No. 12, p. 3] Second, Dixon claims that the ALJ improperly accorded significant weight to the opinions of non-examining sources. [*Id.*] Third, she takes issue with the ALJ's assessment of her subjective complaints. [*Id.*, p. 4] Finally, Dixon contends that the ALJ should have accorded more weight to her husband's third-party report. [*Id.*, p. 3] None of these arguments are persuasive.

### A. Dr. Smith's Opinion

Dixon argues that the ALJ improperly accorded "no weight" to physician's assistant Terry Smith's opinion. [Record No. 12, p. 3] Physician's assistants are not considered "acceptable medical sources" under 20 C.F.R. § 404.1502. Rather, they are "other sources" whose opinions are not entitled to controlling weight. 20 C.F.R. § 404.1513(d)(1); S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). The Sixth Circuit has consistently held that the opinions of non-acceptable medical sources are not binding on the ALJ, and that the

ALJ has discretion to determine the appropriate weight to afford these opinions based on all the evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530–31 (6th Cir. 1997) (holding that where the ALJ considered the opinions of non-acceptable medical sources and weighed them with all the other evidence in the record, the court rejected claimant's argument "that the ALJ was required to accord any more deference than this"); *see also Brown v. Astrue*, No. 11-123-GFVT, 2012 WL 4498526, at *2 (E.D. Ky. Sept. 28, 2012).

Mr. Smith completed two disability forms for Dixon. In May 2012, he assessed less than sedentary limitations, including sitting no more than an hour per day, with unscheduled breaks every 15 to 30 minutes for 10 to 15 minutes at a time. [Tr., pp. 484–85, 489] He also determined that Dixon: (i) would miss work more than four days per month; (ii) had a poor ability to interact with supervisors; and (iii) had no ability to deal with work stresses. [*Id.*, p. 490–91] On the second form, Mr. Smith found similar sitting and break limitations, as well as concluding that Dixon could not walk a city block without rest and needed to recline three hours per day. [*Id.*, p. 523–24] With respect to Dixon's mental limitations, Mr. Smith marked that she would be "off-task" at work more than 30% of the time and that she would be absent from work or unable to complete an eight-hour day more than five days per month. [*Id.*, p. 525] Dixon argues that the ALJ erred in according no weight to these findings. [Record No. 12, p. 3]

Since Mr. Smith is not an acceptable medical source, the ALJ did not have to accord significant weight to his opinion, nor did he have to provide "good reasons" for discrediting it. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (requiring "good reasons" for

- 7 -

discrediting *treating* sources). Even still, the ALJ provided good reasons for discounting the opinion. With respect to the Claimant's back condition, the ALJ noted that, from 2011 to early 2012, Mr. Smith prescribed Lorcet for Dixon's back pain even though there were no abnormal findings, suggesting that Mr. Smith primarily relied on Dixon's subjective complaints. [Tr., p. 51, *referring to* pp. 431−36] Next, the ALJ indicated that Mr. Smith primarily relied on Dixon's allegations of pain, rather than objective medical evidence, for his conclusions on the two disability forms. *See Doolin v. Astrue*, No. 3:08-cv-243, 2009 WL 1212232, at *8 (S.D. Ohio May 1, 2009) (ALJ properly discounted medical opinions that relied only on plaintiff's subjective complaints). [Tr., p. 53, *referring to* pp. 484−86]

Mr. Smith did note objective findings between May 2012 and April 2013.[3] [Tr., pp. 51−53, *referring to* pp. 477, 506−07] But it was reasonable for the ALJ to question Mr. Smith's conclusions about the severity of the findings because observations of muscle spasm and back tenderness were accompanied by findings of normal motor strength. [*Id.*, pp. 51−52, *referring to* pp. 496, 541, 545, 550] Further, no abnormal findings related to Dixon's back were found in May, June, or July 2013. [*Id.*, p. 52, *referring to* pp. 533, 535, 537, 539]

Regarding Dixon's heart condition, the ALJ concluded that Mr. Smith's opinion was inconsistent with treating source opinions, which may be entitled to controlling weight. S.S.R. 96-2p, at *1 [Tr., pp. 51, 53] While treating physician Dr. Podapati diagnosed hypertension, chronic palpitations, three premature atrial contractions, and intermittent

---

3    One report describes tender to palpation over the lumbar-sacral spine and straightening of the lumbar lordosis. [Tr., p. 477] The other describes thoracic tenderness, lumbosacral tenderness, and sacroiliac joint tenderness. [*Id.*, p. 506]

ventricular pacing, he also found a normally functioning pacemaker and no ventricular arrhythmias. [*Id.*, pp. 457−59] And while Dr. Antimisiaris observed supraventricular tachycardia,[4] he did not find any syncope[5] or hypersensitive carotid stress syndrome.[6] [*Id.*, p. 474] Although these findings strongly suggest the existence of a cardiac impairment, they do not support Mr. Smith's conclusions regarding the severity of Dixon's condition. Further, when Dr. Antimisiaris upgraded Dixon to a biventricular pacemaker in January 2013, she reported no palpitations until July 9, 2013. [*Id.*, pp. 533, 548] Additionally, the ALJ noted that the treating physicians offered no opinion regarding Dixon's limitations. [*Id.*, p. 53] Because Mr. Smith's opinion is inconsistent with the record as a whole, the ALJ was entitled to discount it.[7] 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

With respect to Dixon's mental impairments, the ALJ stated that he accorded "great weight" to Mr. Smith's findings regarding Dixon's ability to remember and carry out instructions, but that he accorded "little weight" to Mr. Smith's conclusion that Dixon has a poor ability to deal with work stresses. [Tr., p. 54] An ALJ may discount the findings of an

---

4   Supraventricular tachycardia is a rapid heart rate caused by an abnormal electrical impulse. Typical symptoms include palpitations, anxiety, chest pain, and fainting. *Supraventricular Tachycardia*, EMEDICINEHEALTH, *available at* http://www.emedicinehealth.com/supraventricular_tachycardia/page3_em.htm#supraventricular_tachycardia_svt_psvt_symptoms.

5   Syncope is a temporary loss of consciousness and posture, described as fainting. *Syncope*, AMERICAN HEART ASSOCIATION, *available at* http://www.heart.org/HEARTORG/Conditions/Arrhythmia/SymptomsDiagnosisMonitoringofArrhythmia/Syncope-Fainting_UCM_430006_Article.jsp.

6   This condition is an exaggerated response to stimulation of the carotid sinus baroreceptor. It results in dizziness and fainting. *Carotid Sinus Hypersensitivity*, MEDSCAPE, *available at* http://emedicine.medscape.com/article/153312-overview.

7   The ALJ also observed that Mr. Smith's opinion was inconsistent with the findings of state agency physician Dr. Reed, who concluded that the Claimant had the same RFC as the first time she was denied benefits. [*Id.*, p. 53]

"other source" where they conflict with the opinions of acceptable medical sources. *See* 20 C.F.R. § 404.1527(c)(4); *Arnett v. Comm'r of Soc. Sec.*, No. 3:14-cv-177, 2015 WL 4776698, at *4 (S.D. Ohio Aug. 14, 2015). Here, licensed clinical psychologist Dr. Lynch, an acceptable medical source, found that Dixon suffered from only slight-to-moderate limitations in her ability to understand and carry out simple instructions; tolerate work stress; sustain attention and concentration; and respond appropriately to supervision. [*Id.*, p. 428] In addition, state agency reviewing consultants noted only mild limitations in Dixon's ability to deal with the public, ask questions, and accept instructions from supervisors, as well as a moderate limitation in her tolerance of changes in a work setting. [Tr., pp. 95–96, 113] Because Mr. Smith's opinion regarding Dixon's ability to handle work stress conflicted with both of these opinions, the ALJ was entitled to discount that conclusion. *See* S.S.R. 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006).

Finally, the Claimant asserts that the ALJ erred in discounting Mr. Smith's opinion because of his work relationship with Dixon. [Record No. 12, p. 3] The ALJ implied that Mr. Smith's opinion might be biased due to this three-year professional relationship, finding that Mr. Smith's failure to rely on objective medical evidence supported such an inference. [Tr., p. 53] The ALJ's inference was reasonable. *See, e.g.*, *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).[8] Further, because the ALJ provided several independently-

---

8 "We must keep in mind the biases that a treating physician may bring to the disability evaluation. 'The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)).

sufficient reasons why he discredited Mr. Smith's opinion, any error is harmless. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

### B.     Non-examining Source Opinions

Dixon also argues that the ALJ erred in giving "great weight" to the opinions of non-examining sources, pointing particularly to the opinions of the state agency reviewing consultants. [Record No. 12, p. 3] Findings of fact made by state agency reviewing physicians are treated as expert opinion evidence of non-examining sources. S.S.R. 96-6p, at *1. The ALJ must consider the relevant factors in 20 C.F.R. § 416.927(c)(2)–(6) in determining the weight to give these opinions. In appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013).

While the ALJ did not state the reasons why he accorded great weight to the opinions of non-examining sources, he compared the findings of the state agency reviewing consultants with those of treating sources. [Tr., pp. 52–53] For example, he noted that in assessing Dixon's mental capabilities, Dr. Lynch estimated Dixon's global assessment of functioning[9] as 52 to 54, indicating only moderate symptoms. [*Id.*, p. 52, *referring to* p. 428] Regarding Dixon's physical limitations, the ALJ compared the consultants' opinions with the opinions of the treating cardiologists and Mr. Smith. [*Id.*, p. 53] Because the ALJ assessed

---

9     The Global Assessment of Functioning Scale has a range of 1–100, with a score of 1 indicating "persistent danger of severely hurting self or others" and a score of 100 indicating no symptoms. Thus, a score of 52–54 is directly in the middle of this range, indicating less than serious symptoms. *Guidelines to Use of Axis V: Global Assessment Functioning Scale*, NEW AVENUES – MIDWEST BEHAVIORAL HEALTH NETWORK (August 2011), *available at* www.newavenuesonline.com/

the supportability of these non-treating source opinions, he did not err.  20 C.F.R. § 416.927(c)(3).

### C.    Dixon's Subjective Complaints

Dixon asserts that the ALJ failed to properly evaluate her credibility, alleging that he drew "impermissible inferences about [her] lack of mental health treatment." [Record No. 12, p. 4] When an ALJ makes a determination regarding a claimant's credibility, he is entitled to great deference because he is able to "observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ who rejects a claimant's testimony must clearly state his reasons. *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The Sixth Circuit has a two-prong test for evaluating subjective allegations. First, the court examines whether objective medical evidence confirms the severity of the alleged pain arising from the condition. *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 990 (6th Cir. 2009). Second, it examines whether the medical condition can reasonably be expected to produce the alleged disabling pain. *Id.* The ALJ followed the test, finding that Dixon was credible regarding the nature of her impairments and that these impairments could reasonably be expected to cause the alleged symptoms. [Tr., p. 50] He did not find Dixon credible, however, in her claims regarding the intensity, persistence, and limiting effects of the symptoms. [*Id.*]

The ALJ provided four reasons for discounting the Claimant's testimony. First, he appropriately highlighted the discrepancy between her testimony and the objective medical evidence, discussed in detail above. S.S.R. 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

[Tr., pp. 50−52]  Second, the ALJ noted that Dixon has failed to seek mental health treatment.  [*Id.*, p. 52]  Failure to seek formal mental health treatment is "hardly probative" of whether a claimant suffers from a mental impairment, *Burton v. Apfel*, 208 F.3d 212, at *4 (6th Cir. 2000), and "should not be a determinative factor in a credibility assessment." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  The record does not reveal whether the ALJ drew any inference from Dixon's failure to seek treatment, and the Court will not speculate as to the ALJ's reasoning process.

Third, the ALJ discounted Dixon's testimony because she was able to work for ten years after receiving the pacemaker.  [Tr., p. 52]  This reason carries little weight, as Dixon only worked for one year after her alleged disability began.  [*Id.*, pp. 209−11, 231]  Fourth, the ALJ found Dixon's alleged limitations inconsistent with her daily activities.  [*Id.*, p. 52] An ALJ may consider the claimant's daily living activities in assessing her credibility.  20 C.F.R. § 416.929(c)(3); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986).  Dixon testified that she helps with housework, such as by wiping off counters or picking-up, with frequent breaks.  [*Id.*, pp. 31, 50]  She also occasionally shops and can clean dishes while seated.  [*Id.*, pp. 31, 33]  Due to the ALJ's consideration of these daily activities, he did not err in according less weight to Dixon's allegations regarding the severity of her symptoms.  S.S.R. 96-7p, at *3.

While two of the ALJ's four reasons for discrediting the Claimant's testimony *may* not be valid, any error is harmless.  *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (error is harmless if "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination").  Because Dixon's testimony

conflicted with the objective medical evidence and her own report of her daily activities, the ALJ did not err in according it little weight.

### D. Third-Party Report

In addition, Dixon claims that the ALJ erred in giving little or no weight to her husband's third-party report.[10] [Record No. 12, p. 3] "Perceptible weight must be given to the testimony of lay witnesses where it is consistent with medical evidence." *Malone v. Comm'r of Soc. Sec.*, 69 F.3d 537, at *3 (6th Cir. 1995). "If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney*, 480 F. App'x at 810. However, where an ALJ discusses at length the objective medical evidence, he is not required to include a separate review of a third party statement. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005) (finding that the ALJ did not commit reversible error by failing to specifically mention letter from claimant's mother).

Here, the ALJ did not explicitly state why he discredited Dixon's husband. However, because he preceded his discussion of the third-party report with a thorough explanation of the objective medical evidence, he was not required to explicitly state his reasons. *See Pasco*, 137 F. App'x at 842. [Tr., pp. 51–52] Further, because Mr. Dixon essentially parroted his wife's subjective complaints, the ALJ's reasons for discrediting the Claimant's reports also apply to his view of Mr. Dixon's report. Moreover, the ALJ noted that Mr. Dixon's report was internally inconsistent. [*Id.*, p. 52] Mr. Dixon reported that the Claimant

---

10   Dixon suggests that the ALJ gave little or no weight to her daughter's opinion and/or the opinions of other family members. [Record No. 12, p. 3] However, no other lay witness opinions appear in the record. Thus, the Court does not address these alleged reports.

does about one hour of housework each day, but he also stated that he and their daughter do all the housework during the week. [*Compare* Tr., p. 235 *with* p. 237] For these reasons, the ALJ did not err in according little weight to Mr. Dixon's report.

### E. Hypothetical Question

The Court disagrees with Dixon argues that the ALJ's hypothetical question to the vocational expert was improper.[11] A VE's response to a hypothetical question only constitutes substantial evidence where it "accurately portrays [the plaintiff's] individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1989). However, an ALJ is only required to incorporate the limitations he accepts as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (affirming Secretary's decision where ALJ's hypothetical question to VE included only some of the plaintiff's alleged illnesses). Where there is "some evidence in the record" supporting the assumptions of the hypothetical, the hypothetical question is not erroneous. *Chandler v. Comm'r of Soc. Sec.*, 124 F. App'x 355, 358–59 (6th Cir. 2005).

The ALJ's hypothetical included physical constraints such as only "occasional climbing of ramps or stairs" and no more than "frequent balancing, stooping, kneeling, crouching, or crawling."[12] [Tr., p. 36] It also included a description of Dixon's mental capacities, such as an ability to sustain concentration for two hours at a time and to adapt to

---

[11] Dixon claims that she cannot perform the job titles listed by the VE. [Record No. 12, p. 6] In pointing to her medical history, symptoms, medications, and side effects, Dixon seems to be arguing that the ALJ did not include these limitations in his hypothetical.

12 The ALJ determined that the Claimant can now crawl "frequently," rather than occasionally, because few abnormalities regarding her knees, hips, shoulders, or other joints have been noted since the decision of the prior ALJ. [Tr., pp. 53, 477, 496, 500, 502, 506]

simple changes in a work environment. [*Id.*, p. 37] This hypothetical is supported by more than "some evidence in the record." *Chandler*, 124 F. App'x at 358–9. For instance, the ALJ incorporated many of the exact physical findings of the state agency reviewing consultants. [*Compare* Tr., p. 36 *with* p. 94] Additionally, these consultants found that the Claimant had no understanding, memory, concentration, persistence, or social interaction limitations, and that she could tolerate simple changes in her routine. [*Id.*, p. 96] Further, Dr. Lynch only found slight-to-moderate limitations in Dixon's ability to sustain concentration and respond to work pressures. [*Id.*, p. 428]

Because the ALJ incorporated the limitations he accepted as credible, his hypothetical was not improper. Thus, the VE's response constitutes substantial evidence of an RFC of light work, with identified restrictions. *Casey*, 987 F.2d at 1235.

### IV.

The ALJ properly evaluated the opinions of the physician's assistant and non-examining consultants. The record of this proceeding also demonstrates that the ALJ properly assessed the credibility of the Claimant and her husband. Further, substantial evidence supports the ALJ's determination that Dixon can perform light work, with some restrictions. Accordingly, it is hereby

**ORDERED** as follows

1. Plaintiff Sandra L. Dixon's Motion for Summary Judgment [Record No. 12] is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

      3.      The decision of Administrative Law Judge Don C. Paris will be **AFFIRMED** by separate Judgment entered this date.

This 29th day of September, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge